**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JOSE PAGAN,

                              Plaintiff,

                                                    9:18-CV-1094
                    v.                              (TJM/DJS)

DONALD VENETTOZZI, *et al.*,

                              Defendants.

**APPEARANCES:**                         **OF COUNSEL:**

JOSE PAGAN
Plaintiff, *Pro Se*
70 Winthrop Avenue
New Rochelle, NY 10801

HON. LETITIA JAMES                       ERIK BOULE
Attorney General of the State of New York    PINSONNAULT, ESQ.
Attorney for Defendants
The Capitol
Albany, NY 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff Jose Pagan brings this civil rights action, pursuant to 42 U.S.C. §

1983, alleging that Defendants violated his constitutional rights while he was in the

custody of the Department of Corrections and Community Supervision ("DOCCS") at

Wallkill Correctional Facility ("Wallkill").  *See* Dkt. No. 2, Compl.  On initial review of

the Complaint pursuant to 28 U.S.C. §§ 1915(e) and 1915A, the District Court dismissed

a number of Plaintiff's claims, allowing Plaintiff's Fourteenth Amendment due process

claims against Defendants Cardone and Venettozzi to proceed. Dkt. No. 9. The District Court then granted in part a Motion for Reconsideration by Plaintiff, and determined that, after Plaintiff clarified his claims, his Fourteenth Amendment due process claims against Defendants Cotto and Purdy also survived initial review. Dkt. No. 24. Defendants have now filed a Motion pursuant to Federal Rule of Civil Procedure 12(b)(6), seeking to dismiss the Complaint in its entirety. Dkt. No. 32. Plaintiff's opposition was due by June 17, 2019; the Court advised Plaintiff of the Motion and his response deadline. Dkt. No. 33. Additionally, upon his initial failure to respond to the Motion, in light of his *pro se* status, the Court granted him an additional extension of time to respond until August 30, 2019, and advised Plaintiff of the potential consequences of the Motion. *See* Dkt. No. 34. Plaintiff has not submitted an opposition or any request for additional time to respond to the Motion.

For the reasons that follow, the Court recommends Defendants' Motion to Dismiss be granted in part and denied in part.

## I. BACKGROUND

Plaintiff filed the present civil rights Complaint alleging wrongdoing that occurred while he was incarcerated at Wallkill in the custody of DOCCS. According to the Complaint, on September 3, 2015, Plaintiff was escorted to the Wallkill Detention Unit, and was told that he was under investigation. Compl. at pp. 8-9.[1] Plaintiff alleges that the conditions of the detention room were very poor. *Id.* at p. 9. On September 4, 2015,

---

[1] Citations are to the page numbers automatically assigned by the Court's CM/ECF system.

Plaintiff was interviewed by a DOCCS investigator from Office of Special Investigations, Defendant Cotto, who accused Plaintiff of sexually assaulting an inmate named Felder. *Id.* at pp. 9-11. Plaintiff attempted to account for his time during the period when the assault allegedly occurred, but Defendant Cotto would not tell Plaintiff when the incident allegedly occurred. *Id.* Defendant Cotto instructed Plaintiff to provide a statement, and then he was returned to the detention room. *Id.* at pp. 11-12. On September 10, 2015, Plaintiff received a misbehavior report, which was authored by Defendant Cotto. *Id.* at pp. 15-16. The report charged Plaintiff with violating prison rules by demanding sexual favors from Felder and threatening Felder through written notes on two occasions. *Id.* at p. 16. Plaintiff made three selections for an assistant for the disciplinary hearing, but was provided an assistant who he had not selected. *Id.* Plaintiff met with the assistant, and provided him with a list of requested documents and witnesses; his assistant advised him to bring the witnesses to the attention of the hearing officer, and the assistant never reported back to Plaintiff, but signed off as having completed his assistance. *Id.*

Plaintiff's disciplinary hearing was held before Defendant Cardone, and began on September 16, 2015. *Id.* at p. 17. Plaintiff informed Defendant Cardone that his assistant never reported back, and Plaintiff identified the witnesses he wanted to call. *Id.* at pp. 17-18. The hearing was adjourned, and continued on September 18, 2015, during which Defendant Cardone advised Plaintiff that his requested inmate witnesses refused to testify, and questioned Plaintiff regarding the need for his requested staff witnesses. *Id.* at p. 18. Plaintiff explained discrepancies in the evidence, which he believes demonstrate that he did not commit the assault. *Id.* at pp. 18-22. The hearing was then adjourned until

September 25, 2015, at which point Defendant Cardone stated that he had answers to Plaintiff's questions. *Id.* at pp. 22-23. He had Defendant Cotto contacted, who provided a supplemental report. *Id.* at pp. 22-24. Plaintiff objected to the supplemental memorandum because it "seemed as an attempt to disregard the discrepancies surrounding the time, place, and dates of all of [Felder's] allegations." *Id.* at p. 25. Plaintiff requested Felder's inmate disciplinary history, as well as the photo array from which Felder identified Plaintiff, both of which Defendant Cardone refused to provide. *Id.* at pp. 25-28. Plaintiff explained to Defendant Cardone that the report prepared by Nurse Mary Jo LaPenna contained a statement from Felder that was different from that in his initial misbehavior report. *Id.* at pp. 29-30. Plaintiff had requested that Felder be called as a witness, or that he provide testimony, but Defendant Cardone advised Plaintiff that Felder refused to be a witness. *Id.* at pp. 29-31. The disciplinary hearing was then adjourned until September 29, 2015. *Id.* at p. 31. Defendant Cardone then obtained from Ms. LaPenna an addendum to clarify her report. *Id.* at pp. 31-32. Defendant Cardone also advised Plaintiff that he spoke with an officer who was doing rounds at the time of the alleged incident, who was not aware of the alleged incident and provided his log entries from that period of time. *Id.* at pp. 32-33.

Plaintiff objected to a number of perceived issues with the hearing process, and at the conclusion of the hearing, Plaintiff was found guilty of the charges and sentenced to 140 days confinement in SHU, and loss of commissary, packages, and phone privileges during this time. *Id.* at pp. 33-37 & 89. The determination was affirmed by Defendant

Venettozzi. *Id.* at p. 41. As a result, Plaintiff was subjected to numerous restrictions, and his health has suffered. *Id.* at pp. 37-40.

The Complaint includes causes of action for violations of the Fourteenth Amendment based on violations of Plaintiff's procedural due process rights, and Eighth Amendment violations based on the conduct of the investigation and hearing, and the mistreatment Plaintiff suffered including, among other things, unsafe and isolated conditions during the investigations and as a result of the disciplinary findings. *Id.* at pp. 44-47. On initial review of the Complaint, the District Court dismissed Plaintiff's Eighth Amendment claims, Fourteenth Amendment equal protection claims, and his Stigma-Plus claim.

## II. DISCUSSION

### A. Legal Standard

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (*overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984)).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Int'l Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 (1963). Nevertheless,

"the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. at 697 (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 440 U.S. at 555). Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,* 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court

- 6 -

to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. at 679-80.

Where, as here, the complaint was filed *pro se*, it must be construed liberally with "special solicitude" and interpreted to raise the strongest claims that it suggests. *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011). Nonetheless, a *pro se* complaint must state a plausible claim for relief. *See Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, . . . matters to which the court may take judicial notice[,]" as well as documents incorporated by reference in the complaint. *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (citing FED. R. CIV. P. 10(c)).

## B. Analysis

### 1. Collateral Estoppel

Defendants first contend that Plaintiff's claims are barred by collateral estoppel because the matters at issue in this case were already litigated in an Article 78 action brought by Plaintiff. Collateral estoppel applies if:

> (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.

*Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir. 1997) (internal quotation marks omitted) (citations omitted).

There is no dispute that Plaintiff litigated and lost an Article 78 proceeding in state court regarding the same disciplinary proceeding at issue here. *Pagan v. Venettozzi*, 151 A.D.3d 1508 (3d Dep't 2017), *leave to appeal denied*, 30 N.Y.3d 903 (2017). As noted, collateral estoppel may apply when the identical issue has previously been litigated. *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d at 91. The burden of proving identity of the issue rests on the proponent of collateral estoppel. *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 730 (2d Cir. 2001). Here, Defendants offer nothing but a conclusory statement to establish that the issues presented in the two actions are identical. *See* Defs.' Mem. of Law at p. 9. As noted by this district, this is insufficient:

> [B]ecause Defendants have not submitted Plaintiff's Article 78 petition or the briefs filed by the parties in that proceeding, the Court has only the Third Department Opinion in the Article 78 for consideration in assessing whether [Defendants are] entitled to dismissal of Plaintiff's due process claim on collateral estoppel grounds. Having reviewed the Opinion, the Court concludes that it does not provide sufficient information to determine the applicability of the doctrine.

*Quezada v. Fischer*, 2016 WL 11478236, at *6 (N.D.N.Y. Feb. 16, 2016), *report and recommendation adopted*, 2016 WL 1118451 (N.D.N.Y. Mar. 22, 2016). Accordingly, I recommend that the Motion to Dismiss on collateral estoppel grounds be denied.

### 2. Merits of Plaintiff's Due Process Claims

Plaintiff alleges that Defendants deprived him of the process he was due during his disciplinary proceedings. Compl. at pp. 44-45. Defendants do not contend on this Motion that he was not deprived a liberty interest that constituted an "atypical and

significant hardship." *See* Defs.' Mem. of Law at pp. 10-13; *Sandin v. Conner*, 515 U.S. 472, 484 (1995). They contend that Plaintiff's due process claims fail as a matter of law because the Complaint demonstrates that Plaintiff was afforded all the process he was due. Defs.' Mem. of Law at pp. 10-13. Plaintiff appears to allege that he did not receive sufficient advanced notice of the charges against him, which he alleges changed after he received the notice; that his assistant did not provide him with the documents he requested or assist him in obtaining witnesses for the hearing, and that certain of those witnesses did not testify at the hearing; that Defendants Cotto and Purdy denied Plaintiff a meaningful opportunity to be heard during the investigation and participated during the hearing by providing supplemental information to Defendant Cardone; and that the hearing determination was not supported by substantial evidence. *See* Compl. *generally*; Dkt. No. 24 at p. 5.

Specifically, Plaintiff alleges that he met with his assistant, and provided him a list of requested documents and witnesses; Plaintiff alleges the assistant advised him to bring the witnesses to the attention of the hearing officer and "never reported back." Compl. at p. 14. Plaintiff alleges that certain witnesses were not called, and that documents were withheld. *Id.* at pp. 15-35. Plaintiff alleges that he received notice of the charges against him, but that the details of the charges against him changed throughout the investigation and hearing, such that he should have been provided a new misbehavior report. *Id.* at p. 29. Plaintiff alleges that the investigation was not undertaken fairly—he alleges that evidence was created and produced during the hearing as Plaintiff pointed out inconsistencies, and that he was denied access to evidence and witnesses he requested.

Construed liberally, the Complaint alleges that Defendant Cardone overlooked significant evidence, and relied on improper evidence, in making an unsupported determination.

In the context of an inmate disciplinary proceeding, due process requires that the inmate be: (1) afforded advance written notice of the charges against him; (2) provided a written statement supporting the disposition and reasons for the disciplinary action taken; (3) permitted to call witnesses and present documentary evidence; (4) provided a fair and impartial hearing officer; and (5) found guilty only if the disposition is supported by at least "some evidence." *Wolff v. McDonnell*, 418 U.S. 539, 563-64 (1974); *Kalwasinski v. Morse*, 201 F.3d 103, 108 (2d Cir. 1999) (citing cases). Additionally, because Plaintiff was confined to a special housing unit prior to his disciplinary hearing, he was also entitled to an employee assistant. *Clark v. Gardner*, 256 F. Supp. 3d 154, 170 (N.D.N.Y. 2017).

Based on Plaintiff's allegations, the Court recommends finding that, liberally construed and in light of his *pro se* status, Plaintiff has alleged facts plausibly suggesting that Defendants violated Plaintiff's due process rights. *See, e.g.*, *Scott v. Frederick*, 2015 WL 127864, at *14 (N.D.N.Y. Jan. 8, 2015) (recommending motion to dismiss be denied as to the plaintiff's allegations that the hearing officer denied him certain witnesses and documents); *Guillory v. Overbaugh*, 2014 WL 5026781, at *7 (N.D.N.Y. Aug. 7, 2014), *report and recommendation adopted*, 2014 WL 5026789 (N.D.N.Y. Oct. 8, 2014) (finding plaintiff had sufficiently pled a due process violation regarding his right to call witnesses); *Brooks v. Prack*, 77 F. Supp. 3d 301, 315-16 (W.D.N.Y. 2014) (finding plaintiff had sufficiently pled a due process violation based upon his inmate assistant,

*inter alia*, taking plaintiff's list of requests and never returning, and failing to provide him with information regarding certain potential witnesses and certain documents); *Alli v. City of New York*, 2012 WL 4887745, at *6-7 (S.D.N.Y. Oct. 12, 2012) (finding allegations that defendant performed "a biased and incomplete investigation" could proceed); *Gibson v. Travis*, 2016 WL 796865, at *4 (S.D.N.Y. Feb. 25, 2016) (finding, where assistant allegedly refused to provide requested documents and told plaintiff she could get them during the hearing, plaintiff sufficiently alleged a due process violation); *Carpenter v. Dep't of Correction*, 2012 WL 1604878, at *3 (S.D.N.Y. May 8, 2012) ("[W]hether the exclusion of evidence in this case was justified . . . cannot be determined on the fac[e] of the amended complaint").

The Court therefore recommends that Defendants' Motion to Dismiss on the basis that Plaintiff's due process claims fail as a matter of law be denied. *See Guillory v. Overbaugh*, 2014 WL 5026781, at *7 n.14 ("At this juncture, in light of our recommendation that a plausible due process violation has been alleged, we do not make any evaluation as to whether Plaintiff's other grounds in support of his due process claim have merit. Should this recommendation be adopted, all of Plaintiff's alleged grounds for due process violations should be explored during the discovery phase.").

### 3. *Defendant Venettozzi's Personal Involvement*

Defendants also specifically contend that Defendant Venettozzi should be dismissed from the action because Plaintiff does not allege sufficient personal involvement in any constitutional violation. Defs.' Mem. of Law at pp. 12-13. The only relevant allegations in the Complaint are that Plaintiff filed an administrative appeal to

Defendant Venettozzi, that Defendant Venettozzi affirmed the appeal, and that Plaintiff requested reconsideration from Defendant Venettozzi. Compl. at p. 41. Defendants contend that Defendant Venettozzi's affirmance of the disciplinary determination does not constitute sufficient evidence that he proactively participated in reviewing the merits of Plaintiff's claims. Defs.' Mem. of Law at pp. 12-13.

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). A supervisory official "may not be held liable for damages merely because he held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Moreover, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement." *Kinch v. Artuz*, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995) & *Wright v. Smith*, 21 F.3d at 501) (further citations omitted)). "[M]ere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)); *see also Wright v. Smith*, 21 F.3d at 501 (defendant may not be held liable simply because he holds a high position of authority).

Courts within this Circuit are split as to whether an affirmance of a disciplinary determination can suffice to establish personal involvement. Some courts have determined that it can. *See Rodriguez v. Selsky*, 2010 WL 980273, at *5-6 (N.D.N.Y.

Mar. 15, 2010) (finding that affirming determination was sufficient to allege personal involvement, where the resulting sentence was still being served and thus the deprivation was ongoing, and official was therefore in a position to remedy the alleged violation); *Samuels v. Fischer*, 168 F. Supp. 3d 625, 643-44 (S.D.N.Y. 2016) (holding that an affirmance of an unconstitutional disciplinary proceeding can be sufficient to find personal involvement); *Albritton v. Morris*, 2016 WL 1267799, at *15-16 (S.D.N.Y. Mar. 30, 2016) ("[I]t is difficult to imagine how a prison official could be deemed uninvolved where that official considered the inmate's objections and had the power to undo or preserve punishment").

Other courts have determined that an affirmance is not sufficient to establish personal involvement, without some additional action, wherein the defendant personally reviews the determination and takes some proactive action on it that constitutes more than "rubber stamping" the determination. *See*, *e.g.*, *Scott v. Frederick*, 2015 WL 127864, at *17 ("We subscribe to the affirmance-plus standard, which holds that the mere rubber-stamping of a disciplinary determination is insufficient to plausibly allege personal involvement"); *Brown v. Brun*, 2010 WL 5072125, at *2-3 (W.D.N.Y. Dec. 7, 2010) (dismissing claim that "does not allege that [the defendant] proactively participated in reviewing the administrative appeals as opposed to merely rubber-stamping the results.") (internal quotation marks omitted) (citation omitted).

At this early stage in the litigation, the Court declines to find that Defendant Venettozzi was not personally involved in the claims at issue. Even if the Court were to agree that some proactive action is needed to show that Defendant Venettozzi did not

simply rubber stamp the determination, details regarding Defendant Venettozzi's affirmation are not included in the pleadings, and the character of the actions taken by Defendant Venettozzi is unclear.    Therefore, giving Plaintiff the benefit of every reasonable inference to be drawn from the Complaint, as well as the special solicitude that the Court must give to Plaintiff due to his *pro se* status, the Court recommends that Defendants' Motion to dismiss Plaintiff's claim against Defendant Venettozzi on the basis of lack of personal involvement be denied.

### 4.  Plaintiff's Claim for Declaratory Relief

Defendants alternatively seek summary judgment on Plaintiff's claim for declaratory judgment on the ground that such a claim is moot because he has been transferred from Wallkill.  Defs.' Mem. of Law at pp. 13-14.  "In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility."  *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006)).  While requests for declaratory relief against officials of the facility are moot, claims against "higher-ranking officials" are not.  *Barnes v. Furman*, 629 Fex. Appx. 52, 57 (2d Cir. 2015) (summary order).  Here, according to the Complaint, Defendants Cardone and Purdy are officials of Wallkill.  Compl. at pp. 3-5.  Plaintiff alleges that Defendant Cotto is an investigator for the Office of Special Investigations, and Defendant Venettozzi is the Director of Special Housing Units for DOCCS.  *Id.* at pp. 4-5.  As such, I recommend that Plaintiff's claims for declaratory relief against Defendants Cardone and Purdy be dismissed, but that Defendants' Motion be denied as to the claims against Defendants Venettozzi and Cotto.  *See Williams v. Hesse*, 2018 WL 1363759, at *9 (N.D.N.Y. Feb.

2, 2018), *report and recommendation adopted*, 2018 WL 1324950 (N.D.N.Y. Mar. 14, 2018).

## III. CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED**, that Defendants' Motion to Dismiss be **GRANTED IN PART and DENIED IN PART**; and it is further

**RECOMMENDED**, that Plaintiff's claim for declaratory relief against Defendants Cardone and Purdy be **DISMISSED**; and it is further

**RECOMMENDED**, that the Motion be **DENIED** in all other respects; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[2] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.</u>** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*,

---

[2] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Dated:   December 6, 2019
             Albany, NY

Daniel J. Stewart
U.S. Magistrate Judge